# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CASE NO. 7:08CR00041** |
| | ) | **(CASE NO. 7:11CV80341)** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **ROBERT DWAYNE EARLY, ET AL.,** | ) | **By: Robert S. Ballou** |
| Defendant. | ) | **United States Magistrate Judge** |

## REPORT AND RECOMMENDATION

Robert Dwayne Early ("Early"), a federal inmate proceeding pro se, filed this motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. The United States moved to dismiss, arguing that Early's claims are without merit. The court found material facts in dispute regarding Early's claim that his counsel provided deficient advice which deprived Early of the opportunity to reach an informed decision about whether to plead guilty or to proceed to trial. The court took the government's motion to dismiss under advisement and referred the matter to me, pursuant to § 636(b)(1)(B), to conduct an evidentiary hearing and to submit a report of proposed findings of fact, conclusions of law, and a recommended disposition of all of Early's § 2255 claims. Counsel was appointed to represent Early, and I conducted an evidentiary hearing on July 13, 2012, with the defendant participating via video conferencing. For the reasons set forth below, I find that Early is not entitled to relief under § 2255 as to any of his claims, and therefore, I **RECOMMEND** that the motion to dismiss be **GRANTED**.

## I

A grand jury of this court issued a third superseding indictment in March 2009 against Early and other defendants charging him with one count of conspiracy to distribute one hundred grams or more of heroin, in violation of 21 U.S.C. § 846; one count of attempted possession with

the intent to distribute heroin, in violation of 21 U.S.C. § 84 l(a)(1); and two counts of

distribution and possession with the intent to distribute heroin, in violation of 21 U.S.C.

§ 841(a)(1). In the early stages of the proceedings, Early was represented by court-appointed

attorney David Damico, but in February 2009, Early retained Melvin Hill to represent him in the

criminal proceedings. On April 30, 2009, the United States filed an "INFORMATION TO

ENHANCE SENTENCE," based on Early's prior drug trafficking felony conviction from 1995

in this court. (ECF No. 257.)

Early went to trial in May 2009. Several codefendants testified against Early, who chose

not to testify. The jury convicted Early on all counts. At sentencing, the court found that Early's

criminal history qualified him for the career offender sentence enhancement under U.S.

Sentencing Guidelines Manual ("USSG") § 4B1.1(a), resulting in offense level 37 and criminal

history category VI, with a custody range of 360 months to life in prison. (PSR ¶¶ 48-50; 62-

64.) The court determined that designating Early as a career offender overrepresented his record

because he was 17 years old when he committed one of the prior offenses. The court departed

downward by one criminal history category and sentenced Early to 324 months imprisonment.[1]

The United States Court of Appeals for the Fourth Circuit affirmed the judgment. United States

v. Early, 374 F. App'x 422 (4th Cir. 2010).

Early filed a § 2255 motion, later supported by a memorandum and a sworn declaration,

raising five claims of ineffective assistance by his counsel both at trial and on appeal. The

claims raised by Early are as follows:

1. Counsel failed to fully advise Early of the advantages and disadvantages of pleading
   guilty versus going to trial. (Claim 1).

---

[1] See Sent. Tr. 27-28, Aug. 13, 2009.

Case 7:08-cr-00041-GEC-RSB   Document 503   Filed 11/27/12   Page 2 of 19   Pageid#: 2678

2. Counsel failed to object to the court's conclusion that it could only depart one criminal history category from the Career Offender Guideline. (Claim 2).

3. Counsel failed to object to the court's decision to impose a "substantial sentence" based, in part, on the defendant's refusal to cooperate with the government. (Claim3).

4. Counsel failed to to object to the court's reliance on Early's need for rehabilitation as an aggravating sentencing factor. (Claim 4).

5. Appellate counsel failed to brief and argue the sentencing errors alleged in Claims (2), (3), and (4). (Claim5).

## II

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel during all critical stages of the criminal proceedings, including guilty plea negotiations. Missouri v. Frye, __U.S.__, 132 S. Ct. 1399, 1405, 1408 (Mar. 21, 2012). To succeed on a claim of ineffective assistance at any stage, the defendant must establish that counsel's "deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984).

The deficient performance facet of this analysis "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687. Petitioner must overcome a strong presumption that counsel's performance was within the range of competence demanded from attorneys defending criminal cases," and that "under the circumstances, [counsel's] challenged action might be considered sound trial strategy." Id. at 689.

Counsel provides effective assistance with respect to a pending plea offer if he (a) notifies the client of the offered plea agreement and explains its terms; (b) advises the client of the alternative to go to trial, (c) advises the client of the strengths and weaknesses of the case against him, (d) advises the client of the probable outcomes of the guilt and sentencing phases of each option; and (e) permits the client to make the ultimate decision. Jones v. Murray, 947 F.2d

3

1106, 1110-11 (4th Cir. 1991). "When defense counsel allow[s a plea] offer to expire without advising the defendant [of the offer] or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires." Frye, 132 S. Ct. at 1408.

The second facet of the ineffective assistance analysis requires the defendant to prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

> A defendant claiming that ineffective assistance led to rejection of a favorable plea offer must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Lafler v. Cooper, __U.S.__, 132 S. Ct. 1376, 1385 (Mar. 21, 2012). The habeas court need not determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. Strickland, 466 U.S. at 697. The defendant bears the burden of proving by a preponderance of the evidence his grounds for relief under § 2255. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

### III

Claim 1 that counsel provided ineffective assistance relating to plea issues is analyzed in four sub-parts: (A) counsel "never explained" the "elements of the crime of conspiracy"; (B) counsel failed to "explain the advantages and disadvantages associated with pleading guilty or going to trial"; (C) counsel discussed the possibility of pleading guilty, but did not explain the option to enter an "open plea" to the indictment instead of making concessions by entering into a

Case 7:08-cr-00041-GEC-RSB   Document 503   Filed 11/27/12   Page 4 of 19   Pageid#: 2680

written plea agreement; and (D) counsel "never told [him] that the Government's case against [him] was overwhelming." Mem. Op. 1, Mar. 29, 2012 (Docket No. 447) (quoting Early Decl. (Docket No. 419)). "Early contends that if he had been properly advised by counsel and entered a plea of guilty, he would have likely received a reduction for acceptance of responsibility and, thus, a lower sentence." Mem. Op. 1-2.

Neither the record of the criminal proceedings or the evidence submitted at the evidentiary hearing demonstrates that the performance of Early's counsel on any of these guilty plea issues fell below an objective standard of reasonableness. In reaching this finding, I have taken into account the rationality and internal consistency of the testimony, the extent of detail and coherent nature of the testimony, the manner of testifying by the witnesses, and the degree to which the subject testimony is consistent or inconsistent with other evidence in the case.

Hill has more than 25 years of experience in the practice of criminal law and in prosecuting and defending federal drug charges which weighs favorably regarding Hill's testimony of advising Early about the law generally, the application of the law to the facts of his case, and the available options of pleading guilty or proceeding to trial. Several factors weigh against Early's credibility in general: his admission during the hearing that he lied to the grand jury when he denied selling heroin; his multiple felony convictions; his motivation to lie to achieve relief from his lengthy sentence; and his nervous and angry demeanor at the hearing. In addition, for specific reasons herein stated, I did not find Early's testimony to be believable on several key issues related to his claims. I conclude that Early has failed to prove that Hill provided deficient counsel as alleged in Claim (1) of the § 2255 motion, and I recommend granting the motion to dismiss as to this claim in its entirety.

### Claim 1(A):  Elements of Conspiracy

Early claims that Hill failed to explain the elements of a conspiracy charge, and as a result, Early did not understand that the United States merely had to prove that he was part of an agreement with others to buy or sell heroin.  Mem. Sup. 2.   At his arraignment, Early indicated that he had reviewed the charges (including conspiracy) and possible penalties with his prior counsel, that he understood the charges and penalties, and had no questions for the court. (Arraign. Tr. 7-10, Nov. 12, 2008; Evid. Hr. Tr. ("Tr.") 78-80., July 13, 2012.) (ECF No. 427, 478.)  At the evidentiary hearing on his § 2255 motion, Early testified that he never understood the concept of conspiracy well enough to explain it to anyone (Tr. 48-49); that counsel told him he could not be found guilty of conspiracy based merely on testimony from co-conspirators, without corroborating physical evidence, video footage or audio recordings of transactions (Evid. Hr. Tr. 50; 73-74; 78; 83.). Early further testified that until after his trial, he thought "conspiracy was an agreement between two or more people to sell drugs," more like a "business," but did not "look at [his own conduct of selling dope to get high] as conspiracy" (Tr. 72, 79-80.)

The parties agree that Hill met with Early at least four times before the trial.  Hill testified that he told Early that proof of a conspiracy does not require proof of an explicit or written agreement.  (Tr. 23.)  Hill stated that he advised Early specifically about several co-defendants who would likely testify at trial and explained how their testimony could establish the existence of a conspiracy.  (Tr. 23.)  Hill told Early that the United States had evidence of a large amount of heroin seized from Early's residence; of Early's involvement with a shipment of heroin from New Jersey that police seized after a traffic stop; and of an informant's controlled buy of heroin from Early.  (Tr. 24, 39-41.)   Hill also stated that he explained to Early that his sentence would be determined by the drug weight and even if Early did not personally possess 100 grams of

6

heroin, if the United States proved that the conspiracy distributed 100 grams, Early could be found guilty of distributing that amount.  (Tr. 23.)

Neither the record from the criminal case, nor the evidence of Early's habeas proceeding establishes that Hill performed deficiently in his advice regarding the elements of the conspiracy charge and the evidence the Government would present to establish Early's guilt.  Strickland, 466 U.S. at 689.  I find credible Hill's testimony that well before trial, he thoroughly explained the conspiracy charge, how the prosecution's evidence supported a finding that Early was guilty of conspiracy, and how the conspiracy charge could result in a lengthy sentence, based on evidence of drugs sold by others.  Hill's testimony is corroborated by Early's indications to the court during arraignment that he understood and had no questions about the charges he faced.  Early's assertion that Hill led him to believe witness testimony alone was insufficient to support his conviction for conspiracy is simply incredible, given counsel's extensive federal trial experience and the existence of other evidence the United States had collected against Early in addition to witness testimony.   Because I find that Early failed to prove by a preponderance of the evidence that Hill's representation was deficient, I do not address the prejudice aspect of the Strickland analysis.  Id. at 697.

**Claims 1(B) & 1(C):  Discussions about Pleading Guilty versus Going to Trial**

Early claims in the sworn declaration accompanying the § 2255 motion that Hill "did discuss with me the possibility of me pleading guilty, but our discussions were never elaborate, and never included the option of me pleading to the indictment instead of the plea agreement" (emphasis added).  (ECF No. 419, ¶5.).  Early testified at the evidentiary hearing that his prior counsel, David Damico, reviewed the discovery in the case and advised Early to give

7

information about other drug dealers to law enforcement in exchange for a plea bargain. Early, however, rejected this advice because he feared "repercussions." (Tr. 73.)

Early testified that he first discussed the possibility of pleading guilty with Hill on May 1, 2009, but Hill advised against it. Early and Hill discussed an incriminating telephone conversation that the Government intended to introduce at trial. Early claims that he asked Hill whether he should plead guilty because of this damaging evidence, but claims that Hill again advised Early not to change his plea because "[t]hey already career[ed] [you] anyway, . . . so it doesn't make sense to plead guilty now." (Tr. 51-52.) Early stated that "[p]rior to [the May 1, 2009 meeting, Hill] never discussed a plea" or advised Early to plead guilty. (Tr. 49-50; 80, 85.)

Hill testified that Early discharged Damico and retained him to try the case and that Early had no intention of pleading guilty as recommended by Damico. (Tr. 15.) Hill received discovery materials from Damico, including grand jury transcripts, photographs, and police reports and reviewed these with Early, along with the United States' 800-page investigation file. From Hill's prior representation of Early on other charges, and from conversations in this case, Hill believed that Early understood the proceedings and the evidence. (Tr. 18, 23, 30.) Early's maintained his innocence - "I'm a drug user; I'm not a drug dealer" or "a conspirator."[3] (Tr. 31, 42.) Hill stated that he advised Early his chances of avoiding conviction at trial were slim and that he should consider a plea bargain. (Tr. 25, 43.)

Hill testified that he asks the United States about possible plea offers in every case (Tr. 45.) and that he believed that he discussed with Early the options of pursuing a plea agreement, pleading guilty without an agreement, or going to trial (Tr. 18). Hill stated that on May 1, 2009,

---

[3] Early testified to the grand jury that he was an addict and a heroin user and denied that he ever sold heroin to anyone. (Tr. 65.) At the evidentiary hearing, however, Early told the court that between 2004 and the time of his indictment, he did sell drugs to other people. (Tr. 70.)

8

just days before trial, Hill met with Early and told him about an oral plea offer Hill had just received from the United States which would have allowed Early a custody range of 188 to 235 months. (Tr. 19.) Under the terms of the plea offer, the United States agreed to: (a) withdraw the information seeking enhancement based on Early's prior conviction; (b) set the amount of heroin at 100 grams; (c) stipulate that Early's 1989 conviction was too old to be counted under the sentencing guidelines; (d) forego considering Early as having had a major role in the offense; and (d) recommend credit for acceptance of responsibility. (Tr. 19.) Hill made contemporaneous notes of the terms of the proposed plea deal, his discussions with Early, and the decision by Early to reject the deal. (Govt. Ex. 1.)

Hill testified that he also advised Early that without the plea agreement, Early faced 30 years in prison if convicted at trial and the court found Early's prior convictions qualified him as a career offender. (Tr. 32.) Hill stated that he told Early if he accepted the plea offer for a 15-year sentence, Early could complete his prison sentence when he was in his early fifties, whereas if convicted after trial, Early might be sentenced to 30 years and stay in prison until he was past age 60. (Tr. 21.) Hill stated that he advised Early to accept the plea agreement, but remembered that Early thought fifteen years in prison was too long. (Tr. 19, 21.) Hill does not recall Early ever indicating that he would be willing to plead guilty without a plea agreement. (Tr. 42.)

Early denied that Hill ever told him about the United States' offer to withdraw the April 30 information if Early would plead guilty (Tr. 54) or that Hill ever mentioned any plea deal by which Early would escape career offender status and qualify for a sentencing range of 188 to 235 months. (Tr. 57-58.) Early testified that if Hill had told him about such a plea offer, Early would have accepted it. (Tr. 57-58.) Early also stated that while preparing for trial, Hill never advised him that he could enter an "open plea," without testifying against other people (Tr. 84),

or told him that he would face a 30-year sentence if convicted (Tr. 51; 57), but could get much less time through a plea agreement (Tr. 88).

I find Hill's testimony credible that even before the May 1, 2009 meeting, he explained the three options Early faced: pleading guilty under a plea agreement, pleading guilty without a plea agreement, and going to trial, and that Hill described for Early the different penalties he likely faced with each of these options. Early's testimony to the contrary is simply not believable, in light of Hill's experience with federal trial work. I also find that on May 1, 2009, Hill advised Early of the plea bargain the United States offered, detailed its specific terms for Early, and recommended that Early accept the plea agreement, but that Early rejected the plea offer and insisted on trial. Hill's testimony about this meeting was coherent and detailed and was corroborated by Hill's contemporaneous notes about the meeting, which clearly stated the terms of the plea offer and indicated that Early rejected those terms. Early's testimony about this meeting, on the other hand, included language inconsistent with Hill's manner of speaking. Early's testimony also centered on the illogical conclusion (inconsistent with Hill's experience) that after introduction of a possible career offender enhancement, a plea bargain was a less beneficial option than before. Based on these findings, I conclude that Early failed to prove by a preponderance of the evidence that Hill provided deficient representation as alleged in Claims 1(B) and 1(C) and that these claims fail under the performance facet of the Strickland analysis. 466 U.S. at 687.

I also find from the testimony that Early has failed to prove the prejudice facet of Strickland. Id. at 694. I find credible Hill's testimony that Early believed fifteen years in prison was too long and that Early insisted from the beginning of the case that he wanted to go to trial. Early's statements—that he would have accepted the plea offer if only Hill had presented it to

him and that he would also have pleaded guilty without a plea bargain—do not ring true. Years after the fact of his conviction and his 324-month sentence, Early's testimony that he wanted to plead guilty is nothing more than self-serving invention grown from his regret over not listening to counsel in the first place. I find no reasonable probability that different advice from Hill would have persuaded Early to accept the offered plea deal for fifteen years or to plead guilty without a plea bargain, subject to twice that much time.

### Claim 1(D): Assessment of the Evidence

Early testified that he went to trial based on Hill's advice that his chances to win were "good." (Tr. 59.) Early stated that Hill assessed that the Government's evidence "wasn't much" (Tr. 49.); that it "is nothing . . . weak" (Tr. 56); and that Early "could win," especially if the trial was held in Danville, where it was more likely a greater number of jurors would be African-Americans (Tr. 52-53). Early testified that Hill never advised him not to go to trial (Tr. 54), never told him that the Government had overwhelming evidence against him and never advised him that he had only a slim chance of winning at trial, (Tr. 49-50, 53, 80-81).

I find that Hill's advice regarding the weight and gravity of the evidence against Early was not deficient. Strickland, 466 U.S. at 689. Early's testimony about Hill's assessment of the evidence is not believable. The weight of the evidence indicates that after becoming dissatisfied with Damico's recommendation to pursue a plea bargain early in the proceedings, Early retained Hill with the intention to take the case to trial, heedless of advice to the contrary. Early admitted at the evidentiary hearing that Hill reviewed the discovery with him, discussed the grand jury testimony, and listed the codefendants who would testify at trial (Tr. 54-55), but Early explained how he believed he could win at trial in the face of this evidence. Moreover, Hill's credible and corroborated testimony about the plea offer and his advice to Early to accept that deal contradict

Early's bald assertions that Hill led him to believe the government's case was weak. Because I find that Early failed to prove by a preponderance of the evidence that Hill's representation was deficient, I do not address the prejudice aspect of the <u>Strickland</u> analysis. <u>Id.</u> at 697.

**IV**

Early asserts in Claim (2) that counsel should have objected to the court's finding that § 4A1.3(b)(3)(A) authorized a downward departure of no more than one criminal history category. I find that Early's claim is without merit.

The presentence investigation report ("PSR") found that Early's prior criminal record qualified him as a career offender under <u>U.S. Sentencing Guidelines Manual</u> ("USSG") § 4B1.1(a) (2008). Hill filed written objections to the PSR, arguing that this calculation improperly relied on Early's 1988 New Jersey conviction for possession with intent to distribute cocaine, committed when Early was seventeen, because Early did not receive an adult sentence for that conviction. The court found, however, that the 1988 conviction qualified as a predicate felony for career offender status.

With career offender status, Early had a total offense level of 37 and a criminal history category VI, resulting in a custody range of 360 months to life in prison. Because some of Early's prior convictions occurred so early in his life, the court granted a one-level downward departure under § 4A1.3(b)(3)(A), reducing Early's criminal history category to V. The court stated:

> I invite you to look at–if you want an idea of what the Court is contemplating, take a look at the limitation that the Court operates under, set forth in Chapter 4A1.3(b)(3)(A), page 381 of the 2008 version. . . . One category. The Court is limited to that. We're talking about three years.

(Sent. Tr. 21, Aug. 13, 2009.) (ECF No. 431-2) After some discussion, the court advised Early:

12

In one sense, you have been a lifelong offender. Your entire adult life has been impacted by the use of drugs and the distribution of drugs. But nevertheless, based on the way you got started, it seems to me that you do qualify for a downward departure based on the fact that your criminal record is overrepresented by career offender status.

Under the guidelines, though, the Court can only depart down one criminal history level based on a finding of overrepresentation. That's my understanding of paragraph § 4A1.3(b)(3)(A) of the advisory guidelines. But I'm going to do that; I'm going to drop down, in your case, from a criminal history category VI to a criminal history category V. With an offense level of 37, that produces a guideline range of between 324 and 405 months.

I think this pretty well captures your culpability in this case. After all, you were the head of a group of people who distributed vast quantities of heroin in the Roanoke Valley. . . . I think such a sentence within this range also satisfies the factors cited by Congress under Section 3553(a) of Title 18.

(Sent. Tr. 27-28.)

In support of this claim, Early relies on Supreme Court cases refusing to recognize a presumption of unreasonableness for any sentence outside the advisory guideline range, as calculated under USSG provisions. See, e.g., Gall v. United States, 552 U.S. 38 (2007); Rita v. United States, 551 U.S. 338 (2007). Early argues that the court could have skipped consideration of the limited, guideline-authorized departure to create a variance sentence that satisfied the sentencing factors in 18 U.S.C. § 3553(a). See United States v. Diosdado-Star, 630 F.3d 359, 365-66 (4th Cir. 2011) (citing United States v. Evans, 526 F.3d 155 (2008)). Early's Claim (2) fails under both prongs of the Strickland analysis.

First, counsel had no valid ground to object to the court's interpretation of § 4A1.3(b)(3)(A), which was correct under the terms of the guideline itself.[4] Counsel also had no basis to object to the court's initial calculation of the defendant's sentencing range under the

---

[4] See § 4A1.3(b)(1)(A) ("The extent of a downward departure under this subsection for a career offender within the meaning of §4B1.1 (Career Offender) may not exceed one criminal history category.")

provisions of the advisory guidelines, because this sentencing method was expressly approved by the Supreme Court in United States v. Booker, 543 U.S. 220, 259-60 (2005) (noting that federal sentencing statute as modified by Booker, "requires a sentencing court to consider Guidelines ranges . . . [but] permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a)." See also Gall, 552 U.S. at 53 (holding that sentencing court "shall begin all sentencing proceedings by correctly calculating the applicable Guidelines range"); United States v. Hughes, 401 F.3d 540, 546 (4th Cir. 2005).

Second, the decision by Hill not to object to the one-category departure on the grounds that the guidelines overrepresented the criminal category was a reasonable trial strategy. Hill argued that the court also had other grounds to depart further downward to tailor the sentence as required under § 3553(a). Hill asserted that the court could depart downward based on the early age at which Early became addicted to drugs, on the evidence that Early sold drugs primarily to support his own substance abuse habit, and on the need to avoid punishing Early for proceeding to trial by sentencing him to substantially more prison time that the sentences imposed on Early's co-defendants, who pleaded guilty. (Sent. Tr. 22-25.) Early fails to overcome the presumption that Hill's decision to argue these alternative grounds, rather than to raise the objection Early now proffers, was a reasonable tactical option that the court cannot second guess. Strickland, 466 U.S. at 689.[5]

Third, Early cannot show prejudice under Strickland. The court explained at length its belief that a sentence of 324 months satisfied the § 3553(a) factors. (Sent. Tr. 28-30.) Early fails to demonstrate a reasonable probability that an objection to the one-category reduction would have altered the court's belief in the reasonableness of the sentence as imposed.

---

[5] Counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690.

14

For the stated reasons, I recommend granting the motion to dismiss as to Early's Claim (2).

**V**

In Claim (3), Early asserts that counsel should have objected to the court's reliance on Early's refusal to cooperate with law enforcement as a basis to impose a "substantial sentence," in violation of Early's Fifth Amendment right. From the record, I find that this claim lacks merit.

In discussing the appropriateness of Early's 324-month sentence under the factors in § 3553(a), the court stated:

> [T]he lower sentences [imposed on Early's codefendants] were fueled by the very factors that the guidelines instruct us must be considered: a lesser criminal history, substantial assistance, [and] acceptance of responsibility. . . .
>
> All of those sentences were in line with the guidelines, and, consequently, I feel that yours isn't out of line. It seems to me that it's appropriate and consistent with your level of responsibility in this case.
>
> I also feel that such a sentence satisfies the statutory objectives of promoting respect for the law. <u>After all, if people who head up large heroin conspiracies are allowed to go without substantial assistance and without a substantial sentence, it's not going to make people think that the law is operating like it should.</u>
>
> Furthermore, you've demonstrated by your conduct that you can't play by society's rules. You want to act outside those rules. And, consequently, I think that society needs to be protected from you for a period of time, a substantial period of time, because you've done nothing but spread evil and highly addictive drugs throughout most of your adult life. You need to be taken out of society for a while and kept apart.
>
> I also think, as you pointed out yourself, that a long period of time of abstinence is probably the only thing that will ever get you off of drugs itself. <u>I don't think rehabilitation is one of the primary factors fueling this sentence, but it's a factor that needs to be considered nevertheless. A sentence of incarceration of substantial length will have a secondary effect of rehabilitating you.</u>
>
> And I think that the sentencing framework in this case, . . . is such as to deter others from committing like conduct. . . .

15

> I did think 30 years was too much. . . . But a sentence of 27 years, I think is
> reasonable and consistent with your circumstances.

(Sent. Tr. 28-30) (emphasis added.)

In support of Claim (3), Early relies on <u>United States v. Rivera</u>, 201 F.3d 99 (2d Cir. 1999) which held that an increase in the defendant's sentence by five years within the guideline range based upon the defendant's refusal to cooperate violated the Fifth Amendment. <u>See also</u> <u>United States v. Gaynor</u>, 167 F. App'x 346, 347-48 (4th Cir. 2006) (recognizing circuit split on whether Fifth Amendment limits court's discretion in determining sentence within guideline range).

Counsel had no factual basis for the <u>Rivera</u> objection Early proffers. The guideline range the court employed at sentencing resulted from a downward departure from Early's career offender criminal history category, and the court fixed the sentence at the bottom of that range. The court mentioned the fact that the United States had made no motion to reduce Early's sentence based on substantial assistance, as well as Early's leadership role in the conspiracy, only in discussing the reasonableness of Early's sentencing range under the factors of § 3553(a) as compared to sentences imposed on his codefendants. The court did not rely on Early's failure to cooperate to increase Early's sentence within the guideline range. Therefore, I conclude that Claim (3) fails under both facets of <u>Strickland</u> and recommend that the motion to dismiss be granted as to Claim (3).

## VI

In Claim (4), Early asserts that the court improperly based Early's sentence on his need for rehabilitation, particularly his need to conquer his addiction to drugs. I cannot find from the record that Early is entitled to relief on this claim.

Early relies on 18 U.S.C. § 3582(a), which states:

> The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

18 U.S.C. § 3582(a). After the court sentenced Early, the Supreme Court held that under § 3582(a), "a court may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation." Tapia v. United States, __U.S.__, 131 S. Ct. 2382, 2393 (2011) (settling a circuit court split on this issue). The Court also noted in the Tapia decision, however, that "[a] court commits no error by discussing the opportunities for rehabilitation within prison. . . . To the contrary, a court properly may address a person who is about to begin a prison term about these important matters." Id.

The court's comments during Early's sentencing did not constitute error under § 3582(a). The advisory guidelines called for a lengthy prison sentence for Early's offense conduct, based on his criminal history and role in the conspiracy. Thus, counsel had no viable argument that the court imposed a prison term based on Early's need for rehabilitation. Moreover, the court expressly found that 27 years in prison was consistent with Early's culpability and criminal history, and that it was appropriate to provide just punishment for Early's conduct, to promote respect for the law, to protect society from his commission of additional crimes, and to deter others from similar conduct, in keeping with the sentencing factors in § 3553(a). Nothing in the record suggests that the court increased the length of Early's prison term based on his need for rehabilitation. The court expressly referred to Early's abstinence from drugs in prison as a positive "secondary effect" of the lengthy prison term already determined appropriate for other reasons approved under § 3553(a). At the most, the court's comments constituted an

17

admonishment for Early to take advantage of the opportunity to overcome in prison the addictions that had fueled his criminal conduct, and the Supreme Court has expressly found that such advice during sentencing is not error under § 3582(a).  Tapia, 131 S. Ct. at 2393.

Because Early fails to establish that counsel performed deficiently in failing to raise an objection under § 3582(a) and fails to show a reasonable probability that such an objection would have resulted in a different sentencing outcome, his claim fails under both facets of Strickland.  Therefore, I recommend granting the motion to dismiss as to Claim (4).

## VII

On appeal, Early's appellate counsel challenged the court's determination that the court improperly classified Early as a career offender, based on his 1988 New Jersey drug possession conviction for conduct committed when he was seventeen.  Early, 374 F. App'x at 423-24.  Early asserts in Claim (5) of his § 2255 motion that appellate counsel was ineffective in failing to argue the three sentencing issues raised in his other § 2255 claims.  This claim fails under both prongs of Strickland.

Appellate counsel is not required to raise an issue on appeal merely because it is not frivolous.  See Jones v. Barnes, 463 U.S. 745, 751-54 (1983).  To prove a claim of ineffective assistance by appellate counsel, the defendant must overcome a presumption that counsel raised those issues which he or she believed "were most likely to afford relief on appeal."  Plunkett v. United States, Criminal Action No. 4:04-cr-70083, 2011 WL 2199174, *17 (quoting Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1991)); see also Smith v. South Carolina, 882 F.2d 895, 899 (4th Cir. 1989) (finding that counsel's failure to raise a weak constitutional claim may constitute an acceptable strategic decision designed "to avoid diverting the appellate court's attention from what [counsel] felt were stronger claims").

18

First, for the same reasons that trial counsel had no valid grounds on which to raise the issues Early presents in Claims (3) and (4) during sentencing, appellate counsel had no basis on which to pursue these issues on appeal. Second, even if Early could show that one or more of the issues in Claims (2), (3), and (4) had some arguable merit, Early has not established that any of these claims had a greater likelihood of success than the career offender claim on which appellate counsel chose to focus. Thus, Early does not overcome the presumption that counsel made a reasonable strategic decision when concentrating on the career offender issue on appeal. Because I find that Claim (5) fails under Strickland, I recommend dismissing this claim.

## VI  RECOMMENDED DISPOSITION

For the stated reasons, I **RECOMMEND** that the United States' motion to dismiss (ECF No. 431) be **GRANTED**, as Early has failed to establish that he is entitled to relief under § 2255.

The Clerk of the Court is **DIRECTED** immediately to **TRANSMIT** the record in this case to the Honorable Glen E. Conrad, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

Enter:  November 27, 2012

/s/ Robert S. Ballou

Robert S. Ballou
United States Magistrate Judge